UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

Nº 07-CV-0531 (JFB) (WDW)

———————————

ANGEL L. SANCHEZ AND JEFFREY SANCHEZ,

Plaintiffs,

VERSUS

SUSAN THOMPSON AND PAULINE BUSH,

Defendants.

———————————

**MEMORANDUM AND ORDER**
March 11, 2011

———————————

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiffs Angel Sanchez ("Sanchez") and his brother, Jeffrey Sanchez, (collectively "plaintiffs") brought this action against defendants Susan Thompson[1] and Pauline Bush (collectively "defendants"), alleging that defendants violated plaintiffs' civil rights because defendants orally agreed to sell their home to plaintiffs, but then refused to enter into a written contact for the sale of that home and, instead, sold the home to another individual for a higher price than plaintiffs had agreed to pay. After the Court dismissed the constitutional claim under Section 1983 for lack of state action and granted leave to re-plead, plaintiffs filed an amended complaint alleging a new claim—namely, discrimination based on national origin under the Fair Housing Act. In particular, plaintiffs asserted that defendants did not sell them the house because they are from Puerto Rico. The claim is based solely on an allegation by plaintiffs that, during the negotiations, defendant Susan Johnson asked plaintiff Angel Sanchez, "Where are you from?" According to plaintiffs, he responded that he is from Puerto Rico. In January 2010, plaintiff Jeffrey Sanchez voluntarily withdrew as a plaintiff in this action and accordingly was terminated from the case. (*See* Docket No. 67.) Thus, the only remaining plaintiff is Angel Sanchez (hereinafter "Sanchez" or "plaintiff").

Defendants have moved for summary judgment. For the reasons discussed herein, defendants' motion for summary judgment is granted. Although there are factual disputes regarding the plaintiff's offering

---

[1] Although the complaint refers to the defendant as Susan Thompson, it is clear from the parties' submissions that her correct name is Susan Johnson.

price (which plaintiff asserts was $285,000 and defendants assert was $150,000) and whether that offer was orally accepted by defendants, these factual disputes do not preclude summary judgment on the Fair Housing Act claim. In particular, notwithstanding these contractual disputes regarding an alleged oral agreement, it is undisputed that the defendants sold their home at a higher price (than plaintiff's claimed offer of $285,000) to a Hispanic couple. Given this undisputed evidence, no rational jury could conclude that defendants' refusal to sell to plaintiff was based on plaintiff's national origin. In response to this undisputed evidence, plaintiff simply asserts in a conclusory fashion that defendants were willing to sell to individuals of Hispanic origin, but not someone specifically from Puerto Rico. As a threshold matter, there is no evidence in the record that the Hispanic couple that bought the home was not from Puerto Rico. Instead, plaintiff simply assumes that they are not. In any event, even assuming *arguendo* that the Hispanic couple that purchased the home after plaintiff's offer was not from Puerto Rico, there is absolutely no evidence in the record to support plaintiff's claim that defendants were motivated by a secret, discriminatory animus towards people specifically from Puerto Rico. In short, through conclusory assertions and sheer speculation, plaintiff is attempting to transform a dispute regarding an alleged oral agreement to sell the home to plaintiff at a certain price into a Fair Housing Act claim. However, sheer speculation is not sufficient to survive summary judgment. Given the record in this case and the above-referenced undisputed facts, no rational jury could rule in plaintiff's favor on this Fair Housing Act claim even if plaintiff's version of events is taken as true and all reasonable inferences are drawn in plaintiff's favor. Accordingly, summary judgment in defendant's favor is warranted.[2]

I. BACKGROUND

A. FACTS

The following facts are taken from the parties' affidavits, exhibits, and Local Rule 56.1 statements.[3]

---

[2] Defendants also have moved for sanctions, but that motion is denied for the reasons set forth herein.

[3] The Court notes that the papers plaintiff filed in opposition to summary judgment did not comply with Local Civil Rule 56.1. Specifically, Local Civil Rule 56.1(a) provides that, "[u]pon any motion for summary judgment . . . , there shall be annexed to the notice of motion a separate, short and concise statement, . . . of the material facts as to which the moving party contends there is no genuine issue to be tried." Moreover, Local Civil Rule 56.1(b) provides that "papers opposing a motion for summary judgment shall include a . . . numbered paragraph responding to each numbered paragraph in the statement of the moving party." Here, although defendants submitted a statement of undisputed facts, plaintiff has not. Where the opposing party fails to provide a separate statement containing factual assertions, the Court is free to disregard any assertions made by the opposing party. *See Watt v. N.Y. Botanical Garden*, No. 98 Civ. 1095 (BSJ), 2000 U.S. Dist. LEXIS 1611, at *1 n.1 (S.D.N.Y. Feb. 16, 2000). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, --- U.S. ----, 129 S.Ct. 2343, 2351 (2009) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04-CV-2935 (ILG), 2006 U.S. Dist. LEXIS 23397, at *4-5 (E.D.N.Y. Apr. 25, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Here, although plaintiff did not

In or around the fall of 2006, plaintiff Angel Sanchez's ex-wife, Damiana Cortez ("Cortez"),[4] approached defendant Susan Johnson ("Johnson")[5] about purchasing Johnson's aunt's house, located at 27 Fourth Avenue, Huntington Station, New York (the "home" or "subject property").[6] The parties thereafter engaged in oral negotiations regarding the purchase price for the subject property. Johnson states that she informed Cortez that the purchase price of the home was $285,000, and that plaintiffs initially made a counteroffer of $150,000. (Johnson Aff. ¶ 4.) However, Sanchez denies that he ever offered $150,000 for the subject property and, instead, claims that he advised defendants that he wanted to buy the home for $250,000. (Sanchez April 17, 2008 Aff. ¶ 3.)[7] Likewise, Derlin Sanchez ("Derlin"), Angel Sanchez's and Damiana Cortez's son, claims that, in or about January 2007, defendant Pauline Bush assured Cortez and Derlin that the subject property would be sold to them for $250,000. (Derlin Sanchez Aff. ("Derlin Aff.") ¶ 4.) Several days later, defendants' attorney called plaintiff's attorney to report that defendants had raised the asking price of the home to $285,000. (Derlin Aff. ¶ 5; Pl.'s Ex. C at 2.) Both Derlin and Cortez claim to have called Johnson to inquire why the asking price for the home had been raised, and Johnson responded that she wanted to get more

---

specifically contest defendants' 56.1 statement, plaintiff's submission provides the factual basis for plaintiff's position. Thus, both the Court and the defendants are able to discern the factual evidence upon which plaintiff is relying to create material issues of disputed fact to overcome summary judgment. Accordingly, in the exercise of its broad discretion, the Court will overlook this defect and will deem admitted only those facts in defendants' Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Fed. Trade Comm'n v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 303 (S.D.N.Y. 2008) (overlooking party's failure to comply with Local Rule 56.1 and considering "'the totality of the parties' submissions in identifying disputed material facts'" (quoting *Hamilton v. Bally of Switz.*, No. 03 Civ. 5685, 2005 WL 1162450, at *9 (S.D.N.Y. May 12, 2005))). Thus, where defendants' Rule 56.1 statement is cited, the statement is supported by the record, and there is no evidence in the record to contradict that fact.

[4] Cortez testified at her deposition that she had been married to Angel Sanchez, but that they are now legally separated. (Cortez Dep. at 13:13-15.)

[5] There is some confusion in the record as to who approached Johnson. For example, Johnson stated in her affirmation that "Duralin Sanchez, the mother of plaintiff, Jeffrey Sanchez, and spouse of the plaintiff, Angel Sanchez, approached me . . . and expressed an interest in purchasing my aunt's home." (Johnson Aff., dated March 29, 2008 ("Johnson Aff.") ¶ 4.) However, plaintiff's submissions reflect that Angel Sanchez's ex-spouse is Damiana Cortez, and that "Derlin" Sanchez is Sanchez's and Cortez's son. Plaintiff's submissions further indicate that it was Damiana Cortez and Derlin Sanchez who approached Johnson about purchasing in the home. As with all facts in the instant case, because the plaintiff is the non-moving party, the Court accepts plaintiff's version of the facts for purposes of the summary judgment motion. In any event, these factual distinctions are not material for purposes of the Court's analysis and have no effect on the Court's decision, for the reasons discussed *infra*.

[6] Johnson is defendant Pauline Bush's niece and is her attorney-in-fact, pursuant to a written Power of Attorney. (Defs.' 56.1 ¶ 1.) As such, Johnson was involved in any and all negotiations related to the sale of her aunt's home. (*Id.* ¶ 2.)

[7] Plaintiff submitted an affidavit dated January 23, 2008 in opposition to defendants' motion for summary judgment. Defendants also submitted an affidavit from plaintiff dated April 17, 2008 (Defs.' Ex. K). The Court has considered both affidavits in deciding the pending motions.

3

money for the house. (Derlin Aff. ¶ 5; Pl.'s Ex. C at 3.) Derlin states that he told Johnson that his father (plaintiff Angel Sanchez) still wished to buy the home, even for $285,000, and that he asked whether they should give Johnson a deposit.[8] (Derlin Aff. ¶ 5; *see also* Sanchez Jan. 23, 2008 Aff. ¶ 2.) According to Derlin, Johnson told Derlin that plaintiff and his family "would need to speak to [their] attorney who would work out the purchase details with [Johnson's] lawyer." (Derlin Aff. ¶ 5.) According to Cortez, Johnson also told Cortez that "when [Johnson's] attorney had the contracts ready we could bring the check." (Pl.'s Ex. C at 3.) It is undisputed that this alleged oral agreement to sell the home for $285,000 was never reduced to writing.

Thereafter, on January 6, 2007, plaintiff arranged to have a home inspection completed for the subject property. (Derlin Aff. ¶ 7.) Sanchez, Cortez, and Derlin attended the inspection. (*Id.* ¶ 8.) According to plaintiff, at some point on the day of the inspection, Johnson asked Sanchez and his family "where are you from," and they responded "from Puerto Rico." (Sanchez Jan. 23, 2008 Aff. ¶ 9; Opp. at 2.) Johnson, however, denies ever asking plaintiff or his family where they were from. (Johnson Aff. ¶ 12.)[9] Later that afternoon, according to Derlin, Derlin observed a real estate agent placing a "for sale" sign outside of the subject property. (Derlin Aff. ¶ 9.) When Derlin approached the agent and asked how much the house was listed for, the agent informed him that the asking price for the house was $299,000, and that "someone in the neighborhood had agreed to pay $285,000 but that Susan Johnson did not want to sell them the house." (*Id.*) The following day, on January 7, 2007, Cortez asked Johnson why the "for sale" sign had been placed outside of the house, "if the house was already being sold to Angel and Jeffrey." (Pl.'s Ex. C at 5.) Johnson reportedly told Cortez "not to worry about it," and that the sign "did not mean anything, if Angel and Jeffrey will pay the asking price of $285,000." (*Id.*) Cortez assured Johnson that plaintiff and his brother were "serious about buying the house," to which Johnson allegedly responded "then the house is sold to Angel and Jeffrey in the amount of $285,000." (*Id.* at 5-6.) Johnson, however, contends that she listed the subject property with Prudential Realty for $299,000 after "[h]aving failed to arrive at a mutually satisfactory purchase price" with plaintiff. (Johnson Aff. ¶ 6.) Indeed, Johnson states that "there was never any meeting of the minds regarding the purchase price" and that plaintiff "never agreed to pay anywhere near the price that was being

---

[8] Cortez states that it was she who reported to Johnson that she was prepared to give Johnson a down payment of $15,300, but Cortez does not indicate whether she affirmatively stated to Johnson that plaintiff was willing to pay $285,000 for the subject property. (Pl.'s Ex. C at 3.)

[9] In her affidavit, Johnson states: "The alleged statement that I asked the Plaintiff's [sic] . . . 'where they were from…' is completely untrue. The only reason that my Aunt did not sell them the house to them was because they never agreed to pay the asking price for the property.

There was never an agreement as to the purchase price. Isn't it strange that the Plaintiff's [sic] in their original complaint never made any reference to any statement regarding the alleged question of "where are you from." It appears very clear and obvious that this is purely fabricated to create a scenario of discrimination. The fact remains that the premises was sold to an Hispanic couple and I could not have cared less where they were from as long as they agreed to pay the purchase price that was requested and negotiated and agreed upon." (*Id.* ¶¶ 12-13.)

4

asked for the sale of the premises." (*Id.* ¶ 5, 11.)

In any event, regardless of whether an oral agreement was reached, it is undisputed that plaintiff never entered into any written agreement with defendants for the purchase of the subject property. Furthermore, it is undisputed that defendants ultimately sold the subject property to a Hispanic couple—Mr. and Mrs. Jorge Rojas—for $290,000. (*Id.* ¶¶ 7, 10.)

B. PROCEDURAL HISTORY

Plaintiffs filed their original complaint in this action on February 7, 2007, alleging violations of their civil rights pursuant to 42 U.S.C. § 1983. By Memorandum and Order dated December 26, 2007, the Court granted defendants' motion to dismiss the complaint on the ground that, *inter alia*, plaintiffs had not alleged any state action as required to state a claim under § 1983. The Court, however, gave plaintiffs leave to re-plead, and they filed an amended complaint on January 23, 2008. Although the amended complaint cited § 1983, the Court construed the amended complaint as raising a Fair Housing Act claim for discrimination on the basis of national origin. Defendants renewed their motion to dismiss, but the Court denied defendants' motion by Memorandum and Order dated July 22, 2008, holding that plaintiffs had sufficiently stated a claim under the FHA for purposes of Rules 8 and 12 of the Federal Rules of Civil Procedure.

After the denial of defendants' motion to dismiss, the parties proceeded to conduct discovery under the supervision of the Honorable William D. Wall, United States Magistrate Judge. Over the course of the next year, the parties had several discovery disputes, each of which was adjudicated by Judge Wall. For example, on December 8, 2008, defendants moved for an order directing plaintiffs to comply with defendants' discovery demands, prohibiting plaintiffs from supporting their claims, and striking portions of plaintiffs' complaint or dismissing the action in its entirety. (*See* Docket No. 36.) Judge Wall granted in part and denied in part defendants' motion. (*See* Docket No. 48.) Specifically, Judge Wall ordered that Angel Sanchez appear for a deposition at defendants' attorney's office on April 10, 2009, and that Sanchez send to defendants' counsel by ten days before his deposition all documents demanded by defendants. (*See id.*) Thereafter, Sanchez agreed to produce documents in response to two of defendants' requests, but, by letter dated March 17, 2009, objected to defendants' other document demands on the grounds that those documents sought "very personal information that has nothing to do with this case." (*See* Docket No. 49.) By Order dated May 29, 2009, Judge Wall construed Sanchez's letter as a request for a protective order, and granted such request. (*See* Docket No. 56.) Judge Wall also noted that Sanchez had appeared for his April 10, 2009 deposition, as ordered by the Court, but defendants' attorney had apparently refused to conduct the scheduled deposition. (*See id.* at 3.) Judge Wall found that, insofar as defendants had not sought the Court's permission to reschedule Sanchez's deposition, defendants had "failed to comply with the court's explicit direction to take plaintiff Angel Sanchez's deposition on April 10, 2009," and accordingly had waived their deposition of Sanchez. (*See id.* at 5.) Judge Wall also noted various other actions of defense counsel that "troubled" the Court, and he warned that "if additional instances of questionable conduct occur, the court will not hesitate to take action including, but not limited to, the imposition of sanctions" against defense counsel. (*See id.* at 4-5.)

5

Subsequently, at the pretrial conference held on September 15, 2009, Judge Wall amended his prior order and directed that plaintiffs appear in court on October 16, 2009 for depositions. (*See* Docket No. 60.) All other discovery was deemed complete. (*See id.*) However, on the date scheduled for the deposition, Angel Sanchez refused to testify and, instead, insisted that Damiana Cortez, Sanchez's ex-wife, testify on his behalf. (Tr.[10] at 4:20-5:20.) Sanchez informed Judge Wall, through an interpreter, that he "doesn't know how to read or write and . . . this is why he has brought [Cortez] with him because she knows the details of the case." (*Id.* at 5:16-20.) After Judge Wall informed Sanchez that only Sanchez, and not Cortez, could testify at Sanchez's deposition, Sanchez responded "I guess I will lose the case . . . because I cannot answer. . . . I'm not capable of answering any questions and she is the one who has always been involved in everything that pertains to this case." (*Id.* at 6:10-20.) Given Sanchez's either inability or unwillingness to testify, defense counsel, at the suggestion of Judge Wall, instead deposed Cortez in order to obtain the factual information necessary to support a motion for summary judgment.[11] (*Id.* at 7:13-21.)

In January 2010, plaintiff Jeffrey Sanchez voluntarily withdrew as a plaintiff in this action and accordingly was terminated from the case. (*See* Docket No. 67.)

---

[10] "Tr." refers to the transcript of the parties' appearance before Judge Wall and subsequent deposition of Damiana Cortez on October 16, 2009. (Defs.' Ex. O.)

[11] Judge Wall indicated that his view was that the case should have been dismissed on the Rule 12 motion and that defendants would only need the answers to about five questions to move for summary judgment. (Tr. at 8:11-9:10.)

On March 4, 2010, defendants moved for summary judgment and for sanctions against plaintiff for failure to comply with court-ordered discovery. Plaintiff Angel Sanchez filed his opposition to defendants' motions on April 6, 2010. Defendants did not file a reply.

The Court has fully considered the submissions and arguments of the parties.

## II. MOTION FOR SANCTIONS

As a threshold matter, defendants have moved for sanctions against plaintiff under Rule 37 of the Federal Rules of Civil Procedure for failure to comply with court-ordered discovery. Specifically, defendants contend that plaintiff Angel Sanchez's refusal to testify at his October 16, 2009 deposition violated Judge Wall's September 15, 2009 Order and that, accordingly, this Court should dismiss plaintiff's claims in whole or in part, and should award defendants the payment of the expenses they incurred in connection with the aborted deposition. For the reasons set forth below, defendants' motion is denied.

### A. LEGAL STANDARD

Rule 37 of the Federal Rules of Civil Procedure provides that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders," including "striking [the disobeying party's] pleadings in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(iii). Moreover, "[i]nstead of or in addition to [the other sanctions permitted], the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure [to comply], unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Although Rule 37 does not set forth factors that courts should consider in determining whether to sanction a noncompliant party, the Rule does instruct "that the sanctions must be 'just,' Fed. R. Civ. P. 37(b)(2)(A), meaning that 'the severity of the sanction must be commensurate with the non-compliance.'" *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 195 (E.D.N.Y. 2010) (quoting *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007)).

In determining whether to "exercise . . . its broad discretion to order sanctions under Rule 37," a court may consider a number of factors, including: "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of his non-compliance." *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002). "[D]ismissal with prejudice is a harsh remedy to be used only in extreme situations and then only when the court finds willfulness, bad faith, or any fault on the part of the [noncompliant party]." *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990) (internal quotation marks and citations omitted). Noncompliance with a discovery order will be considered willful when "the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Davidson v. Dean*, 204 F.R.D. 251, 255 (S.D.N.Y. 2001) (citation omitted). Whether a party acted willfully, in bad faith, or with fault are questions of fact for the court. *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009).

"*Pro se* litigants, though generally entitled to 'special solicitude' before district courts, are not immune to dismissal as a sanction for noncompliance with discovery orders. Dismissal of a *pro se* litigant's action may be appropriate 'so long as a warning has been given that non-compliance can result in dismissal.'" *Id.* at 302 (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) and *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994)).

B. DISCUSSION

The Court finds that Sanchez's conduct during his scheduled deposition does not warrant sanctions against him. As an initial matter, a review of the record reveals that Sanchez was never warned that his failure to answer questions at his deposition could result in dismissal of his claims. Accordingly, given Sanchez's *pro se* status, dismissal of the action is not appropriate in this case. Moreover, the record indicates that Sanchez's refusal to testify was not motivated by plaintiff's willful desire to thwart Judge Wall's order or to prevent defendants from obtaining relevant information. Specifically, Sanchez explained that he "was not capable of answering any questions," in part because he "stutters and he doesn't retain information too well." (Tr. at 6:4-20.) Thus, because he felt that he was not able to testify on his own, Sanchez brought Damiana Cortez with him to the deposition with the apparent intention of having Cortez testify on his behalf. (*See id.* at 5:16-20 ("[H]e doesn't know how to read or write and . . . this is why he has brought [Cortez] with him because she knows the details of the case.").) Sanchez explained to Judge Wall that Cortez was "the one who has always been involved in everything that pertains to this case," and Cortez added that she was there "to help [Sanchez] repeat everything you are saying to him so that he's aware of what's going on and will be able to answer

correctly." (*Id.* at 6:18-7:12.) After hearing Sanchez's explanation, Judge Wall suggested that defense counsel depose Cortez to obtain the necessary factual information to support defendants' summary judgment motion. (*Id.* at 7:13-21.) Based upon this record—in particular, Sanchez's belief that he was not able to testify and his attempt to provide a purportedly more knowledgeable witness to testify on his behalf (and the other reasons discussed below in connection with the request for an award of expenses)—the Court finds that Sanchez's refusal to testify does not constitute the type of misconduct that would warrant dismissal of this action. *See Ghaly v. U.S. Dep't of Agriculture*, 739 F. Supp. 2d 185, 193-94 (E.D.N.Y. 2010) ("[Plaintiff] ultimately heeded [the Magistrate Judge's] order to appear for his deposition, and although he did not respond to the discovery requests as ordered, he made an effort to explain that he believed himself incapable of responding, thereby evincing a lack of 'bad faith.' Furthermore, [plaintiff's] conduct appears not to have amounted to the sort of tactical litigation delays or other misconduct for which the sanction of dismissal has customarily been deemed appropriate. Accordingly, the Court declines to impose the harsh sanction of dismissal with prejudice in this case for plaintiff's discovery peccadillos." (internal citations omitted)).

Furthermore, in its discretion, the Court finds that an award of expenses is unwarranted under the circumstances. First, discovery sanctions ultimately should "restore the prejudiced party to the same position it would have been in absent the wrongful withholding of evidence by the opposing party." *Linde*, 269 F.R.D. at 195 (internal quotation marks and alterations omitted). Here, defendants clearly were able to obtain the information necessary to support their motion for summary judgment, as evidenced by the fact that the Court has decided to grant defendants' motion for summary judgment. Thus, defendants have not been prejudiced in any way by Sanchez's refusal to testify at his deposition, and the Court need not restore them to the position they would have been in absent Sanchez's noncompliance. Second, Sanchez had appeared, and apparently was willing to testify, at his initially scheduled deposition in April 2009, but it was *defense* counsel who refused to take Sanchez's deposition on that date. In fact, Judge Wall found that, as a result of defense counsel's failure to depose Sanchez on the originally scheduled date, defendants had "failed to comply with the court's explicit direction" and accordingly had waived their deposition of Sanchez. (Docket No. 56 at 5.) Defendants were only provided with the opportunity to depose Sanchez after Judge Wall agreed to modify his order and re-schedule Sanchez's deposition for October 2009. Thus, the Court finds, in its discretion, that imposing sanctions to penalize plaintiff for his alleged violation of Judge Wall's discovery order is unwarranted when it is clear that only six months prior, defense counsel had directly violated a similar discovery order and had not been sanctioned for his noncompliance. (*See id.* at 5 ("In the interest of moving this case forward, the court declines at this time to issue an order regarding defense counsel's conduct to date. Counsel is on notice, however, that if additional instances of questionable conduct occur, the court will not hesitate to take action including, but not limited to, the imposition of sanctions.").) Finally, as already noted *supra*, Sanchez's actions do not appear to have been motivated by "bad faith" or any attempt to gain a tactical advantage over defendants in this litigation, and there is no indication that his testimony would have provided any additional factual information beyond what Cortez could provide in a deposition.

Accordingly, defendants' motion for sanctions pursuant to Rule 37 is denied.

## III. MOTION FOR SUMMARY JUDGMENT

Defendants have moved for summary judgment on the grounds that plaintiff has failed to produce evidence to raise a genuine issue of material fact on his Fair Housing Act claim and, based upon the undisputed facts, no rational jury could find in favor of plaintiff. As set forth below, the Court agrees.

### A. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . The nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone "will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars' showing that a trial is needed." *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g.*, *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz*, 258 F.3d at 69).

### B. Discussion

#### 1. Fair Housing Act

The Fair Housing Act ("FHA") makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). Likewise, property owners and their agents may not "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling." *Id.* § 3604(b). Claims of housing discrimination under the FHA are evaluated under the three-part burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003). Under *McDonnell Douglas*, the plaintiff bears the initial burden to establish a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case of housing discrimination under the FHA, a plaintiff must show that: (1) he was a member of a protected class; (2) he sought and was qualified to purchase the home; (3) he was rejected; and (4) the home remained available to other purchasers after he was rejected. *See Mitchell*, 350 F.3d at 47. If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged decision. *See McDonnell Douglas*, 411 U.S. at 802-03. Finally, if the defendant articulates a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to demonstrate that the defendant's reason for the challenged decision is only a pretext for discrimination. *See Mitchell*, 350 F.3d at 47. "Summary judgment is appropriate if no reasonable jury could find that the defendant's actions were motivated by discrimination." *Id.*

#### 2. Application

As a threshold matter, plaintiff has set forth a series of facts in his attempt to establish a *prima facie* case of discrimination under the FHA. First,

plaintiff, who is from Puerto Rico, is a member of a protected class. Second, plaintiff sought to purchase the subject property and has submitted evidence that he was qualified to do so. In particular, Angel Sanchez stated in his affidavit that he had been pre-approved (Sanchez Jan. 23, 2008 Aff. ¶ 4), and plaintiffs submitted a worksheet prepared by a mortgage loan officer for Jeffrey Sanchez that reflected two different payment plans for a $228,000 mortgage. (*See* Pls.' Ex. G.) As to the third and fourth factors, plaintiff has put forth evidence that his offer was rejected and that the home remained available to other purchasers after they were rejected. Plaintiff also claims that he was asked, during the negotiations, where he is from. Thus, construing the facts most favorably to plaintiff, the Court will assume, for purposes of this motion, that plaintiff has established a *prima facie* case under the FHA.

Consequently, the burden shifts to defendants to offer a legitimate, non-discriminatory reason for their adverse decision. Defendant Johnson, who conducted all negotiations related to the subject property, states in her affidavit that the reason she did not sell the subject property to plaintiff was because "[t]here was never any meeting of the minds regarding the purchase price" and that plaintiff "never agreed to pay anywhere near the price that was being asked for the sale of the premises." (Johnson Aff. ¶ 5, 11.) She asserts that plaintiff's allegation that she asked where plaintiff and his family were from is "completely untrue" and that "[t]he only reason that my Aunt did not sell the house to them was because they never agreed to pay the asking price for the property." (*Id.* ¶ 12.) Johnson further explains that because the parties "failed to arrive at a mutually satisfactory purchase price," she listed the subject property with a real estate agent for $299,000 and ultimately sold the property to a Hispanic couple for $290,000. (*Id.* ¶¶ 6-7, 10-11.)

Based on Johnson's sworn statements, defendants have clearly articulated a non-discriminatory reason for their actions. Accordingly, the burden returns to plaintiff to demonstrate that the legitimate reason proffered by defendants was not their true reason but was mere pretext for discrimination. However, even viewing the evidence in the light most favorable to plaintiff, the Court holds that no rational jury could conclude that the reason offered by defendants was a pretext for discrimination and, thus, plaintiff's claim cannot survive summary judgment. As a threshold matter, even assuming *arguendo* that plaintiff had agreed to pay $285,000 for the subject property, it is undisputed that defendants ultimately sold the property to a Hispanic couple for $290,000. In other words, defendants sold their home to a couple of the same general ethnicity as plaintiff for more money than plaintiff had ever agreed to pay. Although it may be true, as Sanchez claims, that plaintiff would have been willing to pay $290,000 if they had been given the opportunity to make a counteroffer, there is no evidence to suggest that defendants' decision to sell their home to another Hispanic couple was motivated by anything other than a desire to secure a higher price for the property. Plaintiff's only response in opposition is the conclusory statement that "defendants did not mind selling the house to another Hispanic as long as it was not a Puerto Rican." (Pls.' Opp. at 2.) However, there is absolutely no evidence in the record to support plaintiff's sheer speculation that defendants felt no ill-will toward Hispanics generally, but instead harbored a secret animosity toward Puerto Ricans in particular. Indeed, far from showing any discriminatory animus toward plaintiff and his family, defendant Pauline Bush—as

noted by plaintiff's son—actually hugged Cortez after Bush initially stated that she would sell the house to plaintiff. (Derlin Aff. ¶ 4.) Furthermore, plaintiff has not even established that the couple who purchased the home—whom the parties acknowledge was Hispanic—was *not* Hispanic of Puerto Rican origin.[12] In any event, even assuming *arguendo* that the purchasing Hispanic couple was not from Puerto Rico, plaintiff has absolutely no evidence that defendants, although willing to sell their home to Hispanics generally, had a specific discriminatory intent toward people from Puerto Rico in particular. Instead, the argument is based upon nothing but unfounded and speculative assumptions about defendants' motivations, and is accordingly not sufficient to create a genuine issue of fact as to whether defendants' proffered reason for their actions was pretext for discrimination.

Moreover, plaintiff's own submissions in opposition to defendants' motion support the conclusion that defendants' refusal of plaintiff's offer to purchase the house was not based on discrimination, but rather was motivated solely for purposes of monetary gain. For example, Derlin Sanchez, Angel Sanchez's son, indicates in his affidavit that defendants increased the asking price of the home at least two times: first from $250,000 to $285,000 and then from $285,000 to $299,000. (Derlin Aff. ¶ 5, 9; *see also* Pls.' Ex. C at 2 (Cortez statement noting price increase from $250,000 to $285,000).) Defendant Johnson clearly explained, in response to plaintiff's question why the price was raised to $285,000, that she merely "wanted to get more money for the house." (Derlin Aff. ¶ 5.) Johnson's subsequent decision to list the home with a real estate agent for $299,000 is consistent with this previously stated desire to "get more money" and shows nothing but her belief that she could obtain a higher purchase price for the home.[13] In fact, Derlin's self-admitted reaction to defendants' decision to re-list the home for $299,000—that is, that his family had been "scammed" (*id.* ¶ 9)—indicates that plaintiff's real dispute with defendants is not that defendants discriminated against him, but instead is that defendants reneged on their alleged oral promise to sell the house at a certain price to plaintiff. (*See also*

---

[12] The Census Bureau lists "Puerto Rican" as an ethnic subgroup of the general "Hispanic or Latino" category. *See* http://factfinder.census.gov/home/en/epss/reg_list.html. *See also Canino v. EEOC*, 707 F.2d 468, 469 (11th Cir. 1983) (discrimination case involving a failure to promote plaintiff "because of his national origin, Hispanic-Puerto-Rican")*; Jimenez v. City of New* York, 605 F. Supp. 2d 485, 491 (S.D.N.Y. 2009) (discrimination case involving plaintiff "of Hispanic race and Puerto Rican national origin");*Rivera v. Baccarat, Inc.*, 10 F. Supp. 2d 318, 321 (S.D.N.Y. 1998) (discrimination case brought by "an Hispanic woman who was born in Puerto Rico"); *EEOC v. Carolina Freight Carriers Corp.*, 723 F. Supp. 734, 737 (S.D. Fla. 1989) (discrimination cases involving employee "of Hispanic national origin having been born in Puerto Rico").

[13] Derlin Sanchez reported in his affidavit that defendants' real estate agent told him that the house had been listed for $299,000, and that "someone in the neighborhood had agreed to pay $285,000 but that Susan Johnson did not want to sell them the house." (Derlin Aff. ¶ 9.) However, assuming *arguendo* that the statement was made, the statement must be considered in the context of the entire record—namely, defendants' prior increase in the asking price of the home and defendants' subsequent sale of the home to a Hispanic couple for $290,000. Given the undisputed evidence of the subsequent sale of the home to a Hispanic couple at a higher price, no rational jury could conclude that this alleged statement reflected a discriminatory animus, rather than a desire to obtain a higher sale price for the property.

Sanchez April 17, 2008 Aff. ¶¶ 8-10 ("It seems that Susan [Johnson] is not aware that a verbal contract has the same validity as a written one. . . . It is obvious that the defendant is finding misleading ways and statements to deny the fact that she did enter into a verbal contract with me . . . . I was clearly misled by the defendants to believe I had a contract of sale for the [subject property].").) Such a contractual dispute is not grounds for a Fair Housing Act claim in the instant case given the lack of evidence sufficient to create an issue of fact on the alleged discriminatory motive.

In sum, the Court concludes, based upon the undisputed evidence (that is, the sale of the property at a higher price to a Hispanic couple) that no rational jury could conclude that defendants' decision not to sell the home to plaintiff was motivated by discriminatory animus towards individuals of Puerto Rican descent, rather than a desire to obtain more money. In response to the undisputed evidence, plaintiff simply offers a conclusory assertion of discrimination—based upon an alleged passing question (*i.e.*, "where are you from") by defendant Johnson during conversations with plaintiff about the home—that is insufficient for a rational jury to find discriminatory intent in the light of the entire record even if plaintiff's version of the events is accepted and all reasonable inferences are drawn in his favor. Accordingly, summary judgment in defendants' favor is warranted.

IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety. Defendants' motion for sanctions is denied. The Clerk of Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 11, 2011
Central Islip, NY

\* \* \*

Plaintiff Angel L. Sanchez is appearing *pro se*. The attorney for defendants is Alan J. Sanders, Esq., of Sanders & Solomon, 33 Walt Whitman Road, Suite 114, Huntington Station, NY, 11746.